O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

R. MORA; L. MORA,                     )  Case No. CV 15-02436 DDP (AJWx)
                                      )
              Plaintiffs,             )  **ORDER GRANTING DEFENDANT'S MOTION**
                                      )  **TO DISMISS WITH LEAVE TO AMEND**
       v.                             )
                                      )  [Dkt. No. 43]
US BANK also known as US              )
BANK, N.A. also known as US           )
BANK HOME MORTGAGE also                )
known as US BANK. N.A.,               )
INC.,                                 )
                                      )
              Defendants.             )
_____  )

     Presently before the Court is Defendant US Bank's Motion to
Dismiss Plaintiffs' First Amended Complaint.  (Dkt. No. 43.)
Having considered the parties' submissions, the Court adopts the
following order.

**I.    BACKGROUND**

     The facts of this case are laid out in the Court's Order
granting Defendant's previous Motion to Dismiss with leave for
Plaintiffs to amend.  (Dkt. No. 30.)  Plaintiffs then filed a First
Amended Complaint alleging four causes of action against Defendant
based on the Equal Credit Opportunity Act, California's Homeowner

1  Bill of Rights and unfair competition laws, and for declaratory

2  relief.  Defendant has again moved to dismiss the complaint.

3  **II.  LEGAL STANDARD**

4       A 12(b)(6) motion to dismiss requires a court to determine the

5  sufficiency of the plaintiff's complaint and whether or not it

6  contains a "short and plain statement of the claim showing that the

7  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under

8  Rule 12(b)(6), a court must (1) construe the complaint in the light

9  most favorable to the plaintiff, and (2) accept all well-pleaded

10  factual allegations as true, as well as all reasonable inferences

11  to be drawn from them.  See Sprewell v. Golden State Warriors, 266

12  F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d

13  1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th

14  Cir. 1998).

15       In order to survive a 12(b)(6) motion to dismiss, the

16  complaint must "contain sufficient factual matter, accepted as

17  true, to 'state a claim to relief that is plausible on its face.'"

18  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

19  Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However,

20  "[t]hreadbare recitals of the elements of a cause of action,

21  supported by mere conclusory statements, do not suffice."  Id. at

22  678.  Dismissal is proper if the complaint "lacks a cognizable

23  legal theory or sufficient facts to support a cognizable legal

24  theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097,

25  1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63

26  (dismissal for failure to state a claim does not require the

27  appearance, beyond a doubt, that the plaintiff can prove "no set of

28  facts" in support of its claim that would entitle it to relief).  A

2

1  complaint does not suffice "if it tenders 'naked assertion[s]'
2  devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678
3  (quoting Twombly, 550 U.S. at 556).  "A claim has facial
4  plausibility when the plaintiff pleads factual content that allows
5  the court to draw the reasonable inference that the defendant is
6  liable for the misconduct alleged."  Id.  The Court need not accept
7  as true "legal conclusions merely because they are cast in the form
8  of factual allegations."  Warren v. Fox Family Worldwide, Inc., 328
9  F.3d 1136, 1139 (9th Cir. 2003).
10 **III. DISCUSSION**
11     **A.   Violation of Equal Credit Opportunity Act ("ECOA")**
12     In their First Amended Complaint ("FAC"), Plaintiffs claim
13 that Defendant "discriminated against Plaintiffs in violation of
14 the ECOA by, with knowledge of their minority status, less than
15 $50,000 annual income, declining income and wealth, L. MORA's
16 receipt of public assistance, L. MORA's lack of work, the
17 business's loss of income, mounting bills, and threat to
18 Plaintiffs' income going forward, insisting on full and immediate
19 payment of a mortgage balance, on pain of foreclosure."  (FAC ¶
20 40.)  Plaintiffs allege that Defendant enforced certain policies
21 that "had a disparate impact on Hispanics in general, and
22 Plaintiffs, in particular, and which caused Plaintiffs to have to
23 fend off two foreclosures, file two bankruptcies, incur attorney's
24 fees, suffer damage to credit, creditworthiness, and reputation,
25 emotional distress, and further damages within the jurisdiction of
26 this court, according to proof."  (Id.)
27     Plaintiffs allege that Defendants were acting pursuant to
28 three policies and that these policies "were either explicitly

intended to, or which had the effect of, denying mortgage loan
modification relief to Plaintiffs as Hispanics, and to other
Hispanics." (FAC ¶ 15.) The first, "Policy I was informally known
as 'Manufacture Default,' which consisted of refusing to
affirmatively (i.e., without solicitation) offer relief, such as
loan modification or short sale, to those with incomes of under
$50,000 between 2007 and 2012." (Id. ¶ 16 (emphasis omitted).)
The second policy, "Policy No. 2, known as 'Do Not Negotiate,'
which consisted of refusing to negotiate in good faith, when
approached [by] borrowers who earned under $50,000 per year, and
who sought to renegotiate their mortgage." (Id. ¶ 17 (emphasis
omitted).) The third and final policy, "Policy No. 3, informally
known as 'Seek Foreclosure Against Those to whom no Affirmative
Relief was Offered, and to Whom Renegotiation was Denied,' which
would be implemented upon those whom BANK refused to affirmatively
offer loan modification, or whom it rejected for loan modification
or other relief." (Id. ¶ 18 (emphasis omitted).)

Plaintiffs rely on these policies as a basis for their
disparate impact claim, but do not have proof that the policies
exist. Instead, Plaintiffs contend that "[t]he existence of [the
policies] can be gleaned from" facts found in their attached
exhibits. (Id. ¶¶ 16-18.) Because this is a motion to dismiss,
the court accepts as true Plaintiffs' allegations of material fact.

In Defendant's Motion to Dismiss ("MTD"), Defendant argues
"that Plaintiffs' FAC fails to sufficiently allege (1) actual
disparate impact and (2) facts demonstrating a causal connection
between the alleged Policies and the purported disparate impact."
(MTD at 11:5-7.) Defendant also argues that "nowhere in the FAC do

1   Plaintiffs state their basis for asserting the existence of the

2   purported Policies.**"** (Id.)  Defendant further argues that

3   Plaintiffs have suffered no actual damages caused by US Bank

4   because "Plaintiffs have no right to a loan modification or short-

5   sale." (Id. at 12:4-6.)

6       The ECOA provides that "[i]t shall be unlawful for any

7   creditor to discriminate against any applicant, with respect to any

8   aspect of a credit transaction (1) on the basis of race, color,

9   religion, national origin, sex or marital status, or age . . .; (2)

10  because all or part of the applicant's income derives from any

11  public assistance program." 15 U.S.C. § 1691(a). "To state a

12  claim for disparate impact discrimination under . . . the ECOA a

13  plaintiff must plead (1) the existence of outwardly neutral

14  practices; (2) a significantly adverse or disproportionate impact

15  on persons of a particular type produced by the defendant's

16  facially neutral acts or practices; and (3) facts demonstrating a

17  causal connection between the specific challenged practice or

18  policy and the alleged disparate impact." Hernandez v. Sutter W.

19  Capital, No. C 09-03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug.

20  26, 2010). This standard requires a plaintiff to plead "the

21  existence of outwardly neutral policies and that such policies have

22  had a disparate negative impact on [a class] generally and [the

23  plaintiff] specifically." Id. at *4.

24      Here, in granting Plaintiffs leave to amend their complaint,

25  the Court stated, "Plaintiffs can state a disparate impact claim

26  only if they can allege facts (1) allowing an inference that the

27  income threshold actually has a disparate impact, and (2) showing

28  that Plaintiffs themselves were subject to the policy and harmed by

1  it." (Dkt. No. 30 at 19.) Plaintiffs have now pled that they
2  earned under $50,000, thus bringing them within the scope of the
3  alleged polices. (FAC ¶ 16(A)(iii).) But Plaintiffs have failed
4  to plead facts that would support the conclusion that the alleged
5  income policy had a disparate impact.

6      Plaintiffs quote a report titled "From Foreclosure to Re-
7  Redlining: How America's largest financial institutions devastated
8  California communities," for the proposition that "the default rate
9  for African American and Latino homeowners (was) more than twice
10  that of whites, and that approximately two-thirds of all
11  foreclosures in California have been among African American, Latino
12  and Asian American borrowers." (FAC ¶ 39 (citing Ex. 14 at 19).)
13  Although this report provides evidence that minorities have a
14  higher rate of foreclosures in California, it does not show that
15  this higher rate of foreclosures is a result of Defendant's alleged
16  policies. Plaintiffs also cite Exhibits 11, 12, 13, and 16
17  (without any indication which particular pages or sections in the
18  hundreds of pages of appended material they intend to refer), and
19  state, "This is the very essence of disparate impact." (Id.)

20      But Plaintiffs merely allege, in conclusory language, that
21  Defendant's polices had a disparate impact on Plaintiffs. That
22  kind of conclusory allegation is insufficient at this stage;
23  Plaintiffs must plead facts that "show 'a significant disparate
24  impact on a protected class caused by a specific, identified . . .
25  practice or selection criterion.'" Ramirez v. Greenpoint Mortg.
26  Funding, Inc. 633 F. Supp. 2d 922, 927 (N.D. Cal. 2008) (quoting
27  Stout v. Potter, 276 F.3d 1118, 1121 (9th Cir. 2002)).

28      Further, Plaintiffs' reliance on their attached exhibits

1    is misplaced.  For example, Plaintiffs cite to Exhibit 14 for the
2    proposition that "in the Los Angeles market, about 20% more
3    Hispanics were denied refinance" in support of their disparate
4    impact claim.  (FAC ¶ 17.)  However, refinancing and loan
5    modifications are not the same thing, see 12 C.F.R. § 226.20, and
6    Plaintiffs here sought to *modify* their loan as a result of
7    financial hardship.  (FAC ¶ 4.)  Because Plaintiffs were seeking to
8    modify rather than refinance their loan, the attached statistical
9    studies regarding refinancing are insufficient to state a claim.
10       Specifically, Plaintiffs rely heavily on Exhibits 13 and 14 to
11   show that Defendant's policies had a disparate impact on Hispanic
12   borrowers.  However, when the Court reviewed the exhibits, it was
13   clear that they do not support the conclusions alleged by
14   Plaintiffs.  Exhibit 13 discusses Defendant's denial of
15   conventional home loans and refinancing to minorities, but it does
16   not discuss loan modifications.  Additionally, while Exhibit 14
17   acknowledges that "California cities experienced fewer loan
18   modifications per number of foreclosed loans than the U.S. as a
19   whole," this does not support Plaintiffs' disparate impact claim.
20   (See Ex. 14 at 31.)  Instead, Exhibit 14 states that there is very
21   little data on loan modification available, and no where does it
22   state that Hispanics received fewer loan modifications as compared
23   to other borrowers.  (Id. at 30.)  Further, Plaintiffs do not
24   always indicate which parts of the exhaustive amount of exhibits
25   attached to their FAC actually do support their arguments.  (See,
26   e.g., FAC ¶ 17(C) (simply stating, "the recorded statistics fully
27   support this; Exh. 13.").)
28

1    For the reasons discussed above, Plaintiffs have failed to

2  sufficiently plead facts that would support a disparate impact

3  claim.  Although Plaintiffs have pled the existence of facially

4  neutral policies, Plaintiffs fail to state facts that show these

5  policies disproportionately impacted Hispanic borrowers.

6  Therefore, Plaintiffs, ECOA claim must be dismissed.

7    **B.   Violation of Homeowner Bill of Rights**

8    Plaintiffs also allege Defendant violated the California

9  Homeowner's Bill of Rights ("HBOR") under California Civil Code

10  section 2924.11(a).  In granting Defendant's first Motion to

11  Dismiss, the Court dismissed Plaintiffs' Homeowner's Bill of Rights

12  Claims without prejudice.  The Court acknowledged that "the

13  pleadings could be amended to state a claim for damages (if the

14  Defendant forecloses) or for injunctive relief (if Plaintiffs

15  pursue some sort of foreclosure alternative with Defendant)."

16  (Dkt. No. 30 at 13.)

17    In the FAC, Plaintiffs pled under California Civil Code

18  section 2924.11(a), which concerns recording a notice of default

19  *after* a short sale was approved.  Defendant points out that "the

20  only notice of default . . . was recorded in July of 2011."  (MTD

21  at 13.)  Because Plaintiffs state that Defendant "gave written

22  approval to a short sale of the subject property" in March 2014

23  (see FAC ¶ 12), the notice of default was recorded *before* the short

24  sale was approved and therefore Plaintiffs' claim under Civil Code

25  section 2924.11(a) cannot stand.

26    Plaintiffs accept Defendant's statement about the timing of

27  the notice of default and request to change the claim to a

28  violation of Civil Code section 2924.11(d) in their Opposition to

1   the Motion to Dismiss.  (Opp'n Mot. Dismiss at 14:6-10.)  Section

2   2924.11(d) concerns the failure to rescind or cancel a notice of

3   default after a short sale has been approved.  A lender must

4   "record a rescission of a notice of default or cancel a pending

5   trustee's sale" after "the short sale has been approved by all

6   parties and proof of funds or financing have been provided to" the

7   lender.  Cal. Civ. Code § 2924.11(d).  Here, Plaintiffs have not

8   pled sufficient facts to state a claim under Civil Code section

9   2924.11(d) because they fail to show that they provided proof of

10  funds or financing to Defendant, thus requiring Defendant to

11  rescind the notice of default.  Therefore, Plaintiffs' HBOR claim

12  is dismissed with leave to amend as to § 2924.11(d) if Plaintiffs

13  have facts to show that they did offer the necessary proof.

14  **C.   Violation of California Unfair Competition and Unfair
        Trade Practices Law**

15  Plaintiffs additionally bring a cause of action for violation

16  of California's unfair competition law ("UCL") under California

17  Business and Professions Code section 17200.  (FAC at 24:15-17.)

18  Plaintiffs contend that Defendant's "refusal to grant relief on the

19  mortgage loan, and their fraudulent, unfair, and dishonest behavior

20  connected with this refusal, in violation of the ECOA, and the

21  Homeowner Bill of Rights, constitutes unfair conduct and unfair

22  business practices."  (FAC ¶ 60.)

23  Defendant argues that Plaintiffs fail to state a claim for

24  unfair competition because they "fail to properly allege the

25  violation of any other law" and "to whatever extent Plaintiffs

26  attempt to bring claims under the UCL's 'unfair' or 'fraudulent'

27

28

1  prong, their UCL claim is inadequately pled." (MTD at 14:24-25,

2  15:5-6.)

3      The UCL "is not confined to anticompetitive business

4  practices, but is also directed toward the public's right to

5  protection from fraud, deceit, and unlawful conduct. Thus,

6  California courts have consistently interpreted the language of

7  section 17200 broadly." Hewlett v. Squaw Valley Ski Corp., 54 Cal.

8  App. 4th 499, 519 (1997) (citations omitted). A defendant violates

9  the UCL when they engage in an "act or practice [that] is unlawful,

10  unfair, fraudulent or in violation of section 17500." South Bay

11  Chevrolet v. General Motors Acceptance Corp., 72 Cal. App. 4th 861,

12  878 (1999). "'The 'unlawful' practices prohibited by . . . section

13  17200 are any practices forbidden by law . . . . [The statute]

14  'borrows' violations of other laws and treats them as unlawful

15  practices independently actionable under section 17200 et seq.'"

16  (Id. at 880 (quoting Hewlett, 54 Cal. App. 4th at 531-532).)

17      Here, Plaintiffs cannot rely on the unlawful prong of the UCL

18  because they have failed to allege facts sufficient to show

19  Defendant violated any law. Because Plaintiffs' ECOA and HBOR

20  claims fail, they cannot state a claim for violation of the UCL

21  based on the unlawful prong. But because Plaintiffs have been

22  given leave to amend their HBOR claims, leave to amend is granted

23  here under the unlawful prong of the UCL.

24      Additionally, Plaintiffs have not sufficiently pled facts to

25  support a claim for violation of the UCL under the "unfair" or

26  "fraudulent" prong. Establishing a claim for fraud under the UCL

27  "requires a showing [that] members of the public 'are likely to be

28  deceived.'" South Bay Chevrolet, 72 Cal. App. 4th at 888 (quoting

1    Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (1994)).

2    Plaintiffs have merely alleged that Defendants' "fraudulent,

3    unfair, and dishonest behavior connected with this refusal . . .

4    constitutes unfair conduct and unfair business practices." (FAC ¶

5    60.)  This conclusory statement is insufficient to support a claim.

6    Additionally, in Plaintiffs' Opposition, they indicate that their

7    UCL claim is based on "Defendant's breach of law" and therefore the

8    Court need not address further the claims as they relate to the

9    unfair or fraudulent prong.  (Opp'n Mot. Dismiss at 14:22.)

10        **D.   Declaratory Relief**

11        Plaintiffs also seek declaratory relief for "a judicial

12   determination of their rights, including their right to amend this

13   First Amended Complaint to add further civil rights and/or other

14   relief." (FAC ¶ 66.)  However, as discussed above, Plaintiffs were

15   "granted leave to amend the complaint solely as to the disparate

16   impact claim under ECOA and any related claim under Cal. Bus. &

17   Prof. Code § 17200." (Dkt. No. 30 at 20.)  Because Plaintiffs were

18   not granted leave to amend with respect to a claim for declaratory

19   relief, this cause of action is dismissed.

20   **IV.  CONCLUSION**

21        For the reasons stated above, the Court GRANTS Defendant's

22   Motion to Dismiss.  Plaintiffs have leave to amend the HBOR claim

23   under 2924.11(d) and any UCL claim as it relates to a violation of

24   HBOR, as detailed above.  The Second Amended Complaint shall be

25   filed within fourteen (14) days from the date of this order.

26   IT IS SO ORDERED.

27   Dated: November 2, 2015

28                                    DEAN D. PREGERSON
                                      United States District Judge

11